IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VIRGIL FREDRICK HEIKEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:17-CV-304-WKW |
| ) | [WO] |
| SHERIFF DENNIS MEEKS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint and amendment thereto filed by Virgil Fredrick Heiken, an indigent inmate, attacking actions related to his arrest for various controlled substance offenses on March 9, 2016 at the residence of his father-in-law. The court takes judicial notice of the case action summary for Heiken's criminal cases as maintained on the Alabama Trial Court System, hosted at www.alacourt.com. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (holding that a federal court may "take judicial notice of [the State's] Online Judicial System"). This document reflects that upon his March 9, 2016 arrest Heiken was charged with unlawful manufacture of a controlled substance in violation of Alabama Code § 13A-12-218, trafficking in methamphetamine in violation of Alabama Code § 13A-12-231(11), possession with intent to sell or deliver drug paraphernalia in violation of Alabama Code § 13A-12-260(d)(1), and chemical endangerment of a child in

violation of Alabama Code § 26-15-3.2(a)(1).  On December 6, 2017, Heiken petitioned the trial court to plead guilty pursuant to an information. Doc. 54-1 at 2.  On December 11, 2017, Heiken entered a guilty plea to unlawfully manufacturing methamphetamine, as charged in Count 1 of the information lodged against him by the District Attorney of Covington County, Alabama.  Specifically, Heiken admitted that:

> [W]hile at or near Covington County, Alabama, on or about . . . March 9, 2016, [he] did knowingly and unlawfully manufacture a controlled substance, to-wit: methamphetamine and/or did knowingly and unlawfully possess precursor substance(s), to-wit: pseudoephedrine, with the intent to unlawfully manufacture a controlled substance, and, in conjunction with said act, did illegally possess, transport, or dispose of hazardous or dangerous materials, to-wit: methamphetamine producing [materials at or near] 305 Hattaway Road and/or a clandestine laboratory operation actually produced any amount of a specified controlled substance, to-wit: methamphetamine and/or a clandestine laboratory operation was for the production of a controlled substance listed in Schedule I or Schedule II, to-wit: methamphetamine, in violation of Title 13A-12-218 of the Code of Alabama, 1975.

Doc. 54-1 at 6.  The State nolle prossed the remaining charges pending against Heiken. Doc. 54-1 at 11.  Heiken did not file a timely appeal of his conviction for the unlawful manufacture of methamphetamine and this conviction therefore became final 42 days after the entry of his guilty plea, on January 22, 2018. *See* Ala. R. App. P. 4(b)(1).

In the instant complaint, Heiken alleges that the March 9, 2016 search of his father-in-law's residence on Hattaway Drive in Opp, Alabama violated his constitutional rights and resulted in the unlawful seizure of evidence. Doc. 1 at 3.  Specifically, Heiken asserts that the defendants did not present a warrant or obtain permission for the search of the home, cited no reason for entry into the home, and lacked authorization to enter the

2

residence. Docs. 1 at 3 & 41 at 2. Heiken further complains that the bond set by the state court is unconstitutional because it "exceeds $350,000.00 which is equivalent to 'no bond.'" Doc. 1 at 3. Heiken also challenges the lack of an indictment in his cases. Doc. 1 at 3. Additionally, in an amendment to the complaint, Heiken maintains that the search violated the Alabama Rules of Criminal Procedure. Doc. 41 at 1. Heiken names as defendants Dennis Meeks, the Sheriff of Covington County, Alabama; Greg Jackson, an officer with the Covington Count Sheriff's Department; and Josh Hudson, a member of the 22nd Judicial Task Force. Heiken seeks a declaratory judgment, injunctive relief, and monetary damages from the defendants in their individual capacities.

The defendants filed motions to dismiss and briefs in support of their motions in which they argue that Heiken's claims entitle him to no relief. Docs. 32, 33, 38 & 39. Defendant Hudson also filed a supplement to his motion to dismiss. Doc. 45. On September 18, 2017, the court issued an order which provided Heiken an opportunity to respond to these motions. Doc. 40. The order advised Heiken that his failure to respond to the motions could result in the dismissal of this case. Doc. 40. Heiken did not file a direct response to this order, but the record indicates that the court received a filing on September 18, 2017, postmarked September 16, 2017, in which Heiken did address defendant Hudson's motion to dismiss, maintaining "that the motion to dismiss is without merrritt [sic] and or frivolous [in] nature." Doc. 41 at 1. In support of this position, Heiken made the following assertions:

> Officer Josh Hudson was not authorized to question plaintiff as plaintiff was merely helping his wife clean her fathers home <ie> co-defendant's

3

> father had been arrested and charged with possession of a control[led] substance. Prior to this date of events plaintiff and co-defendant were sorting through her father's bedroom in preparation to assure it was chemical free. . . .
> There has been no information as to why Officer Josh Hudson stopped by this residence with no warrant to present. What was Hudsons reason, the record does not reflect thus far.
> These facts presented is good cause why the honorable court should deny the motion to dismiss, filed by Defendant [Hudson] on 9-6-17. All premises considered this court holds jurisdiction to hear these and other facts. Subject matter jurisdiction only requires factual bases for the court. Plaintiff feels he has met that qualification.
> Officer Hudson ask for immunity based on nothing and pursuant to 12(b)(1)–(b)(6) rules of civil procedures. These allegations [set forth in the complaint and amendment] are factual and fundamental to the guilt or innocence of the plaintiff.
> . . . [U]nlawful acts by our law enforcement shall not go unpunished.

Doc. 41 at 2.

Upon exhaustive review of the complaint, the amendment to the complaint, the arguments set forth in the defendants' motions to dismiss, as supported by their memorandum briefs, the state-court record of Heiken's controlled substance conviction, and applicable federal law, the court concludes that the motions to dismiss are due to be GRANTED.

## II. DISCUSSION

### A. Excessive Bond.

Heiken challenges the amount of bond imposed in his criminal cases. The defendants maintain that they were not responsible for setting Heiken's bond and therefore argue that this claim is subject to dismissal.

> In Alabama, the exclusive authority to set bail [or bond] is vested with judicial officers. *See* Ala. Code § 12–22–222(b) (noting "the judge or

4

> court" directs "the clerk of the [appropriate] court . . . to admit the defendant to bail in a sum *which may be prescribed by the court*" (emphasis added)); *see also* Ala. R. Crim. P., Rule 7.2 (making judges and magistrates of the state courts responsible for and have authority to set and reduce bond or bail). To this end, a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision—to the extent law enforcement personnel were ever involved with that decision. Thus, law enforcement are only liable for a deprivation of a plaintiff's right to be free from excessive bail if the officer prevented the judicial officer who set the plaintiff's bail from exercising his independent judgment. *See, e.g., Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) (upholding grant of motion to dismiss in part because plaintiff could not properly allege sheriff proximately caused alleged excessive bail violation); *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) (holding sheriff could not be liable under section 1983 for violating a plaintiff's right to be free from excessive bail, even if he recommended a bail amount to the judicial officer who set plaintiff's bail, because "setting the bail bond is entirely at the discretion of the presiding judge").

*Bey v. Abrams*, 2015 WL 3839908, at *11 (N.D. Ala. June 22, 2015).

In his complaint, Heiken makes the conclusory assertion that his bond exceeds $350,000 but fails to present a factual predicate that the defendants in any way influenced the judicial officer's independent judgment in setting this bond amount. Therefore, Heiken "has not pled facts demonstrating [the defendants] had anything to do with [his bond]. Because his pleadings are based merely upon labels, conclusions, and naked assertions (without supporting factual allegations), Plaintiff's section 1983 excessive [bond] claim[] fall[s] woefully short of the burden he has to raise these claims for relief beyond the speculative level." *Id*. Consequently, the defendants' motions to dismiss are

due to be granted as to Heiken's excessive bond claim.[1]

**B.     Lack of Indictment**

To the extent Heiken challenges the lack of an indictment, this claim provides no basis for relief.  These defendants are not responsible for scheduling or presenting cases to a grand jury for indictment.  Moreover, under Alabama law, "criminal proceedings shall be commenced either by indictment or by complaint." Ala. R. Crim. P. 2.1.  In addition, "following receipt of a defendant's written notice of his or her desire to plead guilty as charged[,]" the court may proceed pursuant to an information. Ala. R. Crim. P. 2.2.  Most importantly, the Supreme Court has "held that no federal right to [indictment by] a grand jury exists in state prosecutions.  The Court has consistently reaffirmed this holding." *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991) (citing *Hurtado v. California*, 110 U.S. 516 (1884)); *see Cooksey v. Delo*, 94 F.3d 1214, 1217 (8th Cir. 1996) (noting that in *Hurtado* the Supreme Court "held that neither the Fifth Amendment . . . nor the Fourteenth Amendment's Due Process Clause requires states to afford a defendant the right to be tried only upon indictment").  Thus, the defendants' motions to dismiss this claim are due to be granted.

**C.     Violation of Alabama Rules of Criminal Procedure**

Heiken alleges that the defendants violated the Alabama Rules of Criminal Procedure in conducting the search on March 9, 2016. Doc. 41 at 1.  The defendants argue that this state-law claim provides no basis for relief because the Alabama Rules of

---

[1] In light of Heiken's controlled substance conviction, it also appears that any challenge to the pre-trial bond amount is now moot.

Criminal Procedure do not give rise to a private cause of action. Doc. 45 at 3–4 (citing, *inter alia*, *Gregory v. United States*, 2013 WL 3874752, at *6 (W.D. Tenn. July 25, 2013), and *Mousseaux v. U.S. Comm'r of Indian Affairs*, 806 F. Supp. 1433, 1438 (D.S.D. 1992)). The defendants are correct that the Alabama Rules of Criminal Procedure do not create a private right of action for violations of the rules. *See, e.g.*, Ala. R. Crim. P. 1.1; Ala. R. Crim. P. 1.5. As a result, Heiken is entitled to no relief on this claim.

**D.     Fourth Amendment Claims**

Heiken contends that the search and seizure of evidence his father-in-law's home on March 9, 2016 violated his Fourth Amendment rights in that the officers searched the residence without reason, authorization, a warrant, or consent. Docs. 1 at 3 & 41 at 2. Heiken concedes that at the time of the challenged search he did not own the home, was not a resident of the home, and was only temporarily visiting the home with his wife. Docs. 1 at 3 & 41 at 2. Pursuant to his guilty plea, Heiken also acknowledged that he was manufacturing methamphetamine while at the residence. Doc. 54-1 at 6–10.

The defendants assert that Heiken has failed to meet his pleading burden on the claims challenging the constitutionality of the search and seizure because "the complaint does not plead any factual allegations which plausibly demonstrate that Plaintiff held a reasonable expectation of privacy in the home." Docs. 33 at 21 & 39 at 20. Specifically, the defendants argue that Heiken's lack of ownership of the home, his concession that he did not reside in the home, his status as a short-term visitor, and the fact that he was

present in the home for the purpose of manufacturing methamphetamine demonstrate that he did not have a legitimate expectation of privacy in the home so as to have standing to raise a Fourth Amendment claim. Docs. 33 at 20–21, 39 at 20 & 54 at 8–9.  After a thorough review of the complaint, the amendment to the complaint, and the guilty plea entered by Heiken, the court agrees with the defendants' position.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although the pleading standard set forth in Rule 8 "does not [demand] detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555.  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant [has acted unlawfully]." *Iqbal*, 556 at 678 (internal quotation marks and citations omitted).  Moreover, it is well established that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a motion to dismiss, this court must accept as true all factual allegations presented by the plaintiff and view them in the light most favorable to him. *Pardus*, 551 U.S. at 94; *Navarro v. City of Riviera Beach*, 192 F. Supp 1353, 1359 (S.D. Fla. 2016) ("When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff."). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising the possibility above speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Twombly*, 550 U.S. at 555–56). The court therefore undertakes a two-pronged approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, the court need not accept legal conclusions as true. *Id*. at 678. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—

but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678–79 (internal quotation marks and citation omitted).

In the complaint and amendment thereto, Heiken makes the conclusory legal assertion that the search of his father-in-law's residence violated his constitutional rights—an assertion this court is not required to accept as true. With respect to the factual allegations presented in his pleadings, Heiken concedes that he is not the owner of the home, did not reside at the home, and was merely visiting the home at the time of the search. Docs. 1 at 3 & 41 at 1. Heiken further states that he was only present at the residence on the date in question to help his wife clean her father's home. Doc. 41 at 2. Heiken alleges that, while he and his wife were at the residence, the defendants conducted a search of the residence without a warrant, permission, reason, or authorization. Docs. 1 at 3 & 41 at 1–2. In his guilty plea, of which the court has taken judicial notice, Heiken admitted that while at his father-in-law's home on the day of the search he "did knowingly and unlawfully manufacture a controlled substance, to-wit: methamphetamine" using chemicals and materials located at the residence. Doc. 54-1 at 6 & 12–14.

The "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation, internal quotation marks and ellipses omitted). Thus, an individual has standing to challenge a search and seizure only if he "had a legitimate expectation of privacy in the

property when it was searched." *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) (citation and internal quotation marks omitted). In *Carter*, the Supreme Court "effectively heightened the burden for a [criminal] defendant claiming a reasonable expectation of privacy in a dwelling other than his own home, when the defendant's presence in the dwelling is for a commercial or business purpose." *United States v. Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999).

> In some circumstances, "a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89, 119 S. Ct. at 473. For example, "an overnight guest in a home may claim the protection of the Fourth amendment, but one who is merely present with the consent of the householder may not." *Id*. at 90, 119 S. Ct. at 473. A defendant also may establish standing by demonstrating an unrestricted right of occupancy or custody and control of the premises searched; ownership is not required, but mere presence [at the premises] or even possession of a key is insufficient. *United States v. Sarda-Villa*, 760 F.2d 1232, 1236 (11th Cir. 1985).

*United States v. Merricks*, 572 F. App'x 753, 756–57 (11th Cir. 2014); *see also Mays v. Davenport*, 560 F. App'x 958, 963 (11th Cir. 2014) (holding that "a person who is merely in another's dwelling to engage in a purely commercial transaction such as narcotics trafficking, who is on the premises for a relatively short period of time, and who does not have a previous connection with the householder, has no legitimate expectation of privacy in the premises and a warrantless search does not violate his Fourth Amendment rights"); *United States v. Bell*, 218 F. App'x 885, 895–96 (11th Cir. 2007) (holding that an overnight guest must show that he was a guest for personal reasons, not for commercial purpose, in order to have a reasonable expectation of privacy in the premises searched and concluding the defendant "had no reasonable expectation of privacy as an

overnight guest because he was using the apartment primarily for commercial purposes"—the distribution of crack cocaine) (citing *Carter*, 525 U.S. at 90–91); *United States v. Higgins*, 282 F.3d 1261, 1268–72 (10th Cir. 2002) (holding that defendant convicted of offenses related to the possession, manufacture and distribution of methamphetamine on another's property—who knew the owner of the property, entered into an agreement with the owner to clean the premises, planned to reside on the premises after conducting necessary cleaning and repairs, moved some personal items onto the property, and possessed a key to the padlock on an exterior fence—fell "short of establishing circumstances on which an objectively reasonable expectation of privacy could be based. . . . [because the defendant's] subjective expectation of privacy is not one that society would recognize as reasonable"); *United States v. Claude X, et al.*, 2009 WL 4730501, at *4 (W.D. Mo. Dec. 3, 2009) (finding that criminal defendant, a friend of the homeowner with a key and permission to clean the premises, had no reasonable expectation of privacy in the premises so as to have standing to challenge the search of the premises); *United States v. Cooper*, 203 F.3d 1279, 1285 n.3 (11th Cir. 2000) (noting that defendants, even if overnight guests rather than visitors, likely would lack standing to challenge the search as they used the premises searched "predominately to engage in narcotics trafficking").

    Heiken admits that he did not own or reside in the premises searched and was merely a visitor at the time of the challenged search. Docs. 1 at 3 & 41 at 1. He also concedes that he was at the home only to "help[] his wife clean her father's home [after

her] father had been arrested and charged with possession of a controlled substance." Doc. 41 at 2. These facts do not plausibly suggest that Heiken exercised either "an unrestricted right of occupancy or custody and control of the premises searched" so as to establish standing to challenge the search. *Merricks*, 572 F. App'x at 757. In addition, despite a familial connection to the home owner, the relevant facts establish that Heiken's presence at the residence on the day of the search related to manufacturing methamphetamine using chemicals and materials available at the residence. Under the circumstances present in this case, the court cannot reasonably infer that Heiken had a legitimate expectation of privacy in the residence of his father-in-law at the time of the search.

Based on the foregoing analysis, the court finds that Heiken fails to state a Fourth Amendment claim to relief that is plausible on its face as the pertinent facts demonstrate he lacked a legitimate expectation of privacy in the property searched. Consequently, with respect to Heiken's claims alleging a violation of his rights secured by the Fourth Amendment, the defendants' motions to dismiss are due to be granted.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions to dismiss be GRANTED on each of the plaintiff's claims for relief.

2. This case be DISMISSED with prejudice.

On or before **February 26, 2018**, the parties may file objections to the

Recommendation and must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

    DONE this 12th day of February, 2018.

                                    /s/ Gray M. Borden
                                    GRAY M. BORDEN
                                    UNITED STATES MAGISTRATE JUDGE